UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMANDA PEREIRA,

    Plaintiff,

v.                                                       Case No. 8:23-cv-287-CPT

MARTIN O'MALLEY,
Commissioner of the Social Security
Administration,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Doc. 29). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1992, has a college education, and has no past relevant work experience. (R. 19, 289, 310, 323). The Plaintiff applied for DIB in July 2020

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

and SSI in August 2020, alleging disability as of February 2020 due to headaches (including migraines) and muscular dystrophy. *Id.* at 289–311, 322. The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. *Id.* at 136–42, 149–55, 161–73, 177–89.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in February 2022. *Id.* at 56–75, 190–91. The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. *Id.* at 56–75. A vocational expert (VE) also testified. *Id.* at 71–74.

In a decision issued in March 2022, the ALJ found that the Plaintiff: (1) had not engaged in substantial activity since her alleged onset date in February 2020; (2) had the severe impairments of obesity, muscular dystrophy, migraine headaches, major depressive disorder, and generalized anxiety disorder; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to various limitations, including a restriction to simple work; and (5) based on the VE's testimony, could perform jobs that exist in significant numbers in the national economy. *Id.* at 11–21. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 20–21.

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment in the listings, the claimant is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council denied the Plaintiff's request for review. *Id.* at 1–7. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew,

reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises three challenges on appeal: (1) the ALJ did not properly evaluate the persuasiveness of the opinion of the Plaintiff's treating neurologist, Dr. Michael Rosario-Prieto; (2) the ALJ failed to account for the Plaintiff's migraine headaches in rendering his RFC determination; and (3) the Appeals Council did not correctly consider additional evidence submitted by the Plaintiff. (Doc. 29). After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's first challenge has merit and alone warrants remand.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and her ability to engage in her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To do so, the ALJ must ascertain given all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. *Id*. §§ 404.1545(a)(1), 416.945(a)(1). In making this finding, an ALJ must consider all medical opinions and prior administrative medical findings in a claimant's case record, together with the other relevant evidence. *McClurkin v. Soc. Sec. Admin.*,

5

625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

A medical opinion is a statement from a physician or other acceptable medical source concerning what a claimant may be able to do despite her impairments; whether the claimant is limited in her capacity to perform various work activities; and whether the claimant can see, hear, or use her other senses or "adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). A prior administrative medical finding, on the other hand, is a finding that pertains to "a medical issue made by [the SSA's f]ederal and [s]tate agency medical and psychological consultants at a prior level of review[,]" but that does not constitute an "ultimate determination about whether [the claimant is] disabled[.]" 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(2).

The Regulations governing the evaluation of medical evidence, including medical opinions and prior administrative medical findings, were amended for disability applications filed on or after March 27, 2017, as this one was. 20 C.F.R. §§ 404.1520c, 416.920c; *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). The ALJ now determines the persuasiveness of a medical opinion and prior administrative medical finding instead of generally basing their weight on the source or consultant who offered the opinion or finding. *Compare* 20 C.F.R. §§ 404.1527(c), 416.927(c) *with* 20 C.F.R. §§ 404.1520c, 416.920c. In conducting this analysis, an ALJ must consider the following five factors: (1) supportability; (2) consistency; (3) the source or consultant's relationship with the claimant; (4) the

6

source or consultant's area of specialization; and (5) any other pertinent factors "that tend to support or contradict a medical opinion" or a prior administrative medical finding, such as whether the source or consultant is familiar with the other record evidence or has "an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* §§ 404.1520c(c), 416.920c(c); *see also Nixon v. Kijakazi*, 2021 WL 4146295, at *3 (M.D. Fla. Sept. 13, 2021) (citation omitted).

Of these factors, supportability and consistency are the most important. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Nixon*, 2021 WL 4146295, at *3 (citation omitted). Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering his own opinion or finding, while consistency deals with whether a medical source or consultant's opinion or finding conforms to other evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2), 416.920c(c)(1), 416.920c(c)(2); *Vachon v. Comm'r of Soc. Sec.*, 2022 WL 458604, at *4 (M.D. Fla. Feb. 15, 2022); *Barber v. Comm'r of Soc. Sec.*, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). The amended Regulations require an ALJ to discuss supportability and consistency but do not obligate him to describe how he evaluated the other three factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation omitted). In the end, the amended Regulations—like their predecessors—do not preclude an ALJ from rejecting any medical opinion or prior administrative medical finding if the evidence buttresses a contrary assessment. *Freyhagen*, 2019 WL 4686800, at *2 (citing *Wainwright v. Comm'r*

7

*of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)).

In this case, the Plaintiff was under the care of her treating neurologist, Dr. Rosario-Prieto, from February 2021 to August 2022. (R. 32–55, 595–617). Dr. Rosario-Prieto saw the Plaintiff a number of times in 2021—including in February, May, and August—and completed a mental capacity source statement for the Plaintiff in January 2022. *Id.* at 595–617. As relevant here, Dr. Rosario-Prieto noted in his statement that the Plaintiff suffered from malaise, phonophobia, photosensitivity, nausea/vomiting, visual disturbances, mood changes, and mental confusion, and that she also experienced four headache days per week lasting up to twelve hours each. *Id.* at 18, 611. Dr. Rosario-Prieto further observed in his statement that the Plaintiff had tried multiple preventative migraine medications but that they did not prove effective. *Id.* at 613. As a result of the Plaintiff's migraines, Dr. Rosario-Prieto opined that she would need to be absent from work more than four days per month, that she would be precluded from performing even basic work activities during her migraines, and that she would need to take twenty-minute unscheduled breaks as needed. *Id.* at 18, 613–14.

In his decision, the ALJ reviewed Dr. Rosario-Prieto's source statement and found it to be "less persuasive." (R. 18). The ALJ reasoned:

> I find the limitations assessed by Dr. Rosario-Prieto to be so extreme as to appear implausible in light of medical evidence of record and his own treatment records. The record shows that in July of 2021, the [Plaintiff] told her primary care provider that she was treating with a neurologist

and her migraines had improved. The most recent records from Dr. Rosario-Prieto revealed that the [Plaintiff] admitted that the medication Fioricet reduces [her] headache pain from a 7 out of 10 to a 3 out of 10. There were other medication changes and treatment options available [to the Plaintiff] such as Botox recommended. However, the [Plaintiff] stated that she lived over one hour away from the office. If in fact the [Plaintiff's] headaches were so totally disabling, surely she would make it a priority to seek treatment or find a facility closer to home. The [Plaintiff] resides in Brooksville, Florida, which is not some remote location[,] nor is she without access to transportation. Notably, she admits that she takes her son to school and picks him up. She also reported that she spends most of her time driving her son to therapy. Thus, I find the [Plaintiff's] allegations and the opinion of Dr. Rosario-Prieto less persuasive.

*Id.* (citations omitted).

The Plaintiff now argues that the ALJ's evaluation of Dr. Rosario-Prieto's opinion is fatally flawed in that it is neither unsupported nor inconsistent with the record evidence. (Doc. 29 at 3–13). The Court agrees.

Beginning with supportability, it is true—as the ALJ mentions—that Dr. Rosario-Prieto's 2021 records reflect reports by the Plaintiff that Fioricet reduced her headache pain from a seven out of ten to a three out of ten. (R. 18, 597, 601, 605). That is hardly the full story though. As the Plaintiff points out, Dr. Rosario-Prieto's treatment notes also reveal that notwithstanding taking Fioricet, the Plaintiff was still experiencing roughly four headaches a week, had tried various other medications without success, and was missing work when suffering from her migraines. *Id.* at 597–608; (Doc. 29 at 7–9). By way of example, Dr. Rosario-Prieto commented in his records relative to the Plaintiff's visits in February, May, and August 2021:

> [The Plaintiff] has chronic migraines. These started in 2018. Is having migraines approximately [five] days/week. For preventative treatment, she has been on prop[r]anolol 20 mg daily for approximately [two] years. This is not helping anymore. Not tried any other preventative treatment. She is on Fioricet. Fioricet reduces her headache from 7/10 down to 3/10. Sometimes she takes Excedrin for it[, but it] does not work as well as the Fioricet. Imitrex in the past worsens her headache.
>
> \* \* \*
>
> In addition, [the Plaintiff] has had chronic migraines for several years. At baseline, she was having [five] migraine headaches per week. Individual attacks may last >24 hours. The headache[s] ha[ve] [led] to major life disruptions[,] such as frequent absences [from] work.
>
> \* \* \*
>
> Once her headache frequency improve[s,] then will discuss abortive treatment. I will certainly change the Fioricet for some other agent. Excedrin was not helpful. Imitrex caused more headaches. Could try Ubrelvy or Nurtec.

(R. 597, 599–601, 603, 605, 607).

These materials, along with the other pertinent records, show that while the Plaintiff's headache pain was less than before, the Fioricet the Plaintiff was taking was not nearly as effective as the ALJ suggested, and that the Plaintiff was still experiencing frequent migraines that disrupted her day to day life and functioning. *See Valentino v. Saul*, 2020 WL 5898768, at *7 (S.D. Fla. Sept. 18, 2020) (noting that a statement about a claimant's improvement must be viewed in the context of the entire record, including any treatment notes which conflict with that assessment) (citing *Sharfaz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Other parts of Dr. Rosario-Prieto's documentation concerning the Plaintiff's headaches and migraines further undermine the ALJ's characterization of the

10

evidence. Dr. Rosario-Prieto's February 2021 records, for instance, contain the notation that "certainly, [Fioricet][5] is not an ideal medication in a patient with frequent headaches." (R. 599). Dr. Rosario-Prieto's records from February and May 2021 also indicate that he and the Plaintiff discussed the differences in abortive and preventative treatment and why it was advisable for the Plaintiff to avoid the former treatment to prevent medication overuse headaches. *Id.* at 599, 603. Dr. Rosario-Prieto's records additionally reflect that the two discussed several preventative medications and their side effects, such as antidepressants, anticonvulsants, antihypertensive medications, vitamins and supplements, Botox, and CGRP inhibitors, but that after conducting a risk benefit analysis, they elected to try magnesium oxide 400 mg daily and venlafaxine 37.5 mg daily. *Id.* at 599–600.

In his treatment notes for the May 2021 visit, Dr. Rosario-Prieto recounted that at the February 2021 visit, the Plaintiff was suffering from frequent migraines for which she started magnesium oxide and venlafaxine but that she "ha[d] not perceived significant improvement" since then. *Id.* at 602. Dr. Rosario-Prieto accordingly increased her venlafaxine dosage to 150 mg daily. *Id.* at 602–03.

In July 2021, the Plaintiff contacted Dr. Rosario-Prieto's office and advised that she was still having three to four headache days per week, even with the increase in venlafaxine. *Id.* at 606. As a result, Dr. Rosario-Prieto added Topamax into her medication regimen. *Id.*

---

[5] The note does not use the word "Fioricet," but it appears from the entirety of the note that this is the correct interpretation. *See* (R. 599).

11

In August 2021, Dr. Rosario-Prieto remarked that the daily dose of venlafaxine "ha[d] not been very helpful" and that Topamax, while reducing the Plaintiff's headache frequency to three to four headache days per month, caused her to experience nightmares and had to be stopped. *Id.* at 606–07. Dr. Rosario-Prieto commented as well that the Plaintiff would therefore continue with venlafaxine and remarked that various alternative medications proved ineffective or might cause hypotension. *Id.* at 607–08.

Turning to consistency, it is accurate—as the ALJ claims—that there is a July 2021 treatment note authored by a different provider, APRN Bradley Ruch, which indicates the Plaintiff's migraines "ha[d] improved at this time."[6] *Id*. at 18, 577. That note, however, does not fairly represent the Plaintiff's condition when the whole of the information before the ALJ is considered. By way of example, one of the medical professionals who cared for the Plaintiff, Dr. Fahad Hawk, stated in his treatment records from May 2021 that venlafaxine afforded the Plaintiff only minimal improvement, that she was still experiencing migraines five times a week with associated photophobia, that she reported her migraines affected her ability to work because she could not concentrate or finish tasks when in the midst of a migraine, and that her migraine symptoms were better with rest. *Id*. at 552, 555.

The Commissioner attempts to counter this evidence by pointing out that during at least some of her appointments with Dr. Rosario-Prieto, as well as during her

---

[6] The ALJ incorrectly attributes this quote to records prepared by Dr. Rosario-Prieto. (R. 18). It was not. *See id.* at 577, 595–617.

appointments with other doctors, the Plaintiff was alert and oriented, displayed a linear thought process, had full strength in her upper and lower extremities, had normal sensory function, and demonstrated a normal gait. (Doc. 32 at 4); (R. 598–99, 602, 606). The medical records also show that the Plaintiff demonstrated a normal memory and good concentration, and was neurologically intact at various times in April, August, September, October, and December 2020, as well as in January, March, and May 2021. (Doc. 32 at 5); (R. 409, 418, 426, 435, 443, 489, 493, 495, 500, 508, 554, 585, 588). The problem with the Commissioner's reliance on these findings is that the ALJ did not cite them in his decision as a reason for discounting Dr. Rosario-Prieto's opinion. *See* (R. 18). It is well settled that the Court may not uphold an ALJ's assessment based on such a post-hoc rationalization offered by the Commissioner on appeal. *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (per curiam) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (same); *Brown v. Comm'r of Soc. Sec.*, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021) (rejecting the Commissioner's assertion that the ALJ did not consider a physician's assessment to be a medical opinion on the ground it was a post-hoc rationalization aimed at explaining away the ALJ's failure to address the opinion). Regardless, it is unclear how these normal physical examination assessments buttress the ALJ's conclusion that the Plaintiff's headaches were not disabling. *Rocha v. Comm'r of Soc. Sec.*, 2021 WL 1131601, at *12 (S.D. Fla. Jan. 26, 2021) (stating that a

normal physical exam does not contradict the presence of headaches); *Lindsey v. Colvin*, 208 F. Supp. 3d 1239, 1248 (N.D. Ala. 2016) (noting that migraine headaches do not need to be proven through objective findings).

In sum, the ALJ's persuasiveness analysis of Dr. Rosario-Prieto's opinion is not supported by substantial evidence. Rather than consider the entire record before him in assessing this opinion, the ALJ essentially "cherry-pick[ed] facts [which] support[ed] a finding of non-disability while ignoring evidence that point[ed] to a disability finding." *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2023) (quoting *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010)). Because the ALJ did not predicate his evaluation of the supportability and consistency factors on the entire record, the evaluation cannot stand. *See Jerona K. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 5491901, at *10 (N.D. Ga. June 29, 2023) (finding that the ALJ's evaluation of a doctor's opinion was not supported by substantial evidence when the ALJ did not base her evaluation of the consistency factor on the entire record).

The ALJ's determination that Dr. Rosario-Prieto's opinion was less persuasive is deficient in another respect as well. As referenced earlier, ALJ's concluded that the Dr. Rosario-Prieto's proposed limitations were "so extreme as to appear implausible," in part, because the Plaintiff rejected treatment and accordingly was not as sick as Dr. Rosario-Prieto opined. *See* (R. 18) (asserting that "there were other medication changes and treatment options available [to the Plaintiff,] such as Botox[,]" and that although the Plaintiff lived over one hour away from the office, "[i]f in fact [her] headaches were so totally disabling, surely she would make it a priority to seek

14

treatment or find a facility closer to home"). The Plaintiff argues that this reasoning employed by the ALJ is improper. (Doc. 29 at 9–10). The Court concurs.

An ALJ may consider a claimant's medical history and her explanations for not seeking treatment when determining a claimant's RFC. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (citations omitted) ("When evaluating a claimant's statements regarding [her] symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints. Nonetheless, the ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that might explain the failure to seek or pursue treatment.") (citing Social Security Ruling 96-7p at 7). Here, contrary to the ALJ's suggestion, the Plaintiff did not fail to seek treatment. This is evidenced from Dr. Rosario-Prieto's note which the ALJ referenced. (R. 18, 607). That note stated in full:

> Other options [for the Plaintiff] include Gabapentin which can help with [her] cramps, Trokendi which can also help with [her] cramps, CGRP inhibitors, and Botox. After discussion, we have decided to try Trokendi. We will start with Trokendi XR 50 mg daily. I have asked [the Plaintiff] to contact me in approximately 2-3 weeks. If [she is] still having frequent headaches, then will increase to 100. . . . If she were to develop side effects or nightmares with [t]he Trokendi, then will try [G]abapentin. [The Plaintiff] was made aware that [G]abapentin will likely help with the cramps but might not necessarily help with the headache[s]. If [G]abapentin does not help with [the] headache[s], then will need to try

15

> CGRP inhibitor. Botox would be another option. However she lives over [one] hour away from us.

*Id.* at 607.

It is evident from a fair reading of this note that the ALJ essentially ignored the fact that the Plaintiff listened to Dr. Rosario-Prieto's recommendation and tried Trokendi to help alleviate her migraines. *Id.* at 18, 607. And Dr. Rosario-Prieto specifically stated that if Trokendi did not work, the Plaintiff would then try Gabapentin, and that if Gabapentin did not work, the Plaintiff would then try a CGRP inhibitor or Botox. *Id.* at 607. In contrast to the ALJ's assertion, the record evidence reflects that the Plaintiff actively sought treatment and was compliant with her recommended medication regimen. This evidence further counsels in favor of a remand. *See Thomas v. Colvin*, 2016 WL 11475232, at *6 (N.D. Fla. May 10, 2016) (remanding the case because the ALJ relied primarily on the claimant's lack of "ongoing or frequent treatment" to conclude that her migraines were not disabling).

This conclusion is additionally buttressed by the fact that the ALJ never rendered any determination that had the Plaintiff proceeded with the Botox treatment, her ability to work would have been restored. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (stating that to "deny benefits on the ground [that a claimant] fail[ed] to follow prescribed treatment, [an] ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored"); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (same); *King v. Astrue*, 2008 WL 697357, at *6 (M.D. Fla. Mar. 13, 2008) (finding that the ALJ's assertion

16

that the claimant failed to follow prescribed treatment was not supported by substantial evidence because there was no indication in the record that the spine surgery at issue would restore her ability to work and because the claimant followed other treatment recommendations regarding her back problems).

The Commissioner argues that the ALJ's treatment error was harmless since his other reasons for finding Dr. Rosario-Prieto's opinion less persuasive remain. (Doc. 32 at 6). This contention is unavailing. As discussed previously, Dr. Rosario-Prieto's opinion was supported by and consistent with other record evidence and, if properly credited, could have resulted in a different conclusion for the Plaintiff. *See, e.g., Martinez v. Comm'r of Soc. Sec.*, 2022 WL 1531582, at *2 (11th Cir. May 16, 2022) (stating that the ALJ's insufficient explanation for discrediting a plaintiff's testimony was not harmless because the ALJ found the plaintiff to be limited to sedentary work, and arguably the outcome may have been different had the ALJ not discredited the plaintiff's testimony).

Because remand is necessary, the Court need not address the Plaintiff's remaining challenges. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding that there was no need to analyze any additional issues because the case was reversed due to other dispositive errors); *Demenech v. Sec'y of Dep't of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to discuss the claimant's remaining arguments due to the conclusions reached in remanding the action); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to

review other claims raised) (citations omitted). On remand, however, the ALJ must consider the entirety of the record evidence in accordance with the governing case law and the applicable regulatory provisions in assessing the Plaintiff's impairments. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (noting that the ALJ must evaluate the whole record on remand).

IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the matter of costs pending a further motion.

SO ORDERED in Tampa, Florida, this 25th day of March 2024.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record